IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | 1:13-CR-119 |
| | ) | |
| JACK STEVEN VANLAAR, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The defendant-inmate, Jack VanLaar, has filed a motion for sentence reduction pursuant to what is commonly known as the compassionate release provision in 18 U.S.C. § 3582(c)(1)(A). Mr. VanLaar asks the Court to reduce his sentence to time-served and modify his supervised release based on the need to care for his elderly mother and his positive development while in prison. The defendant's family circumstances combined with his rehabilitative efforts constitute extraordinary and compelling reasons for a sentence reduction, and the § 3553(a) factors also support early release, if additional conditions of supervised release are added. Mr. VanLaar's motion for a sentence reduction to time served will be granted.

### I. Procedural History

In May 2013, Mr. VanLaar pled guilty to one count of distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1). Doc. 14 at ¶¶ 1–2; Minute Entry 05/30/2013. The Court imposed a below-guideline sentence of 190 months, Doc. 26 at 2, finding a small downward variance was appropriate in order to

adequately distinguish between and among offenders and because Mr. VanLaar had no previous criminal history. Doc. 53 at 3. Mr. VanLaar appealed his sentence, Doc. 27, and the Fourth Circuit affirmed. Docs. 41–43. His later § 2255 petition was unsuccessful. *See* Docs. 54, 58, 61.

In April 2022, Mr. VanLaar filed this motion for compassionate release. Doc. 62. The Court appointed counsel, allowed the defendant to submit additional evidence and supplemental briefing, ordered the Probation Office to file a supplemental report, and directed the government to respond if it objected. Doc. 64. Briefing is now complete.

## II. Crime of Conviction and Sentencing

In November 2012, the National Center for Missing and Exploited Children received a report from Facebook via their "CyberTipline" indicating that a user had uploaded an image of child pornography. Doc. 52 at ¶ 4.[1] The IP address and Facebook identification number associated with the image was connected to Mr. VanLaar. *Id*.

In March 2013, law enforcement agents executed a warrant at Mr. VanLaar's house and located child pornography on Mr. VanLaar's computer. *Id*. at ¶ 6. Mr. VanLaar used "Gigatribe," a peer-to-peer file-sharing platform allowing users to download or share files on their computers, including his "child pornography collection," and to accept invitations from others to access their images and videos. *Id*. Mr. VanLaar's computer contained a significant amount of child pornography, including 547 video files. *Id*. at ¶ 7.

---

[1] The Court adopted the presentence investigation report, Doc. 52, without change. Doc. 53.

2

At sentencing, the Court found that Mr. VanLaar's base offense level was 22 and applied the enhancements that apply in most of these cases as well as appropriate deductions, leading to a total offense level of 37. *Id.* at ¶¶ 14–27. His criminal history score was zero. *Id.* at ¶ 33. Mr. VanLaar's guideline range was 210 to 240 months, with a supervised release range of five years to life. Doc. 53 at 1. The pre-sentence report did not indicate any history of touching children or of soliciting anyone to make or produce child pornography, though in 2010 he did send sexually explicit pictures to a high school student. Doc. 52 at ¶ 31. The Court sentenced Mr. VanLaar to 190 months in prison followed by fifteen years of supervised release. Doc. 26 at 2–3.

## III. Other Relevant Facts

Mr. VanLaar is now 65 years old. Doc. 52 at 2. He has been in custody since October 2013, Doc. 67-1 at 2, and has served roughly 65% of his sentence. *Id.* at 3; Doc. 71 at 10. He is presently scheduled for release in February 2027. Doc. 67-1 at 1; *See Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited June 21, 2022).

While on pretrial supervision before being incarcerated, Mr. VanLaar complied with all conditions of release. Doc. 52 at ¶ 3. Since his incarceration, Mr. VanLaar has had no disciplinary or behavioral issues. Doc. 66 at 2. He has completed 513 hours of educational courses, *id.* at 1, the Drug Education program, *id.* at 2, and he has paid the special assessment fee. *Id.* He has worked steadily in prison work programs. *Id.* His April 2022 work performance rating states that Mr. VanLaar "[g]oes above and beyond

3

[in] keeping the library in order," Doc. 71-1 at 5, and he has received satisfactory or better ratings for all areas of work. *Id.* at 5–6.

At the time of Mr. VanLaar's arrest, he was the primary caregiver for his mother, Anna Van Laer,[2] Doc. 52 at ¶ 71; while she was "in a good state of health," Doc. 36 at 43, she was elderly and "extremely frail." Doc. 52 at ¶ 37. Since then, this responsibility has fallen on Mr. VanLaar's older brother, Frank Van Laer, who lives near their mother. Doc. 62 at 6; Doc. 62-2 at 2.

Mrs. Van Laer is now 98 years old. Doc. 62 at 6; Doc. 63 at 4. She has a history of heart problems and recently was hospitalized for encephalopathy and an infection. Doc. 63 at 8. When Mrs. Van Laer fell before her recent hospitalization, she was on the floor for several hours before Frank came to check on her. Doc. 62-2 at 2. Afterward she spent time in a rehab facility, where repeated falls and muscle weakness were documented. Doc. 63 at 4. She also has mild cognitive impairment and takes various medications. *Id.*

Mr. VanLaar's mother currently lives alone in an apartment. Doc. 63-1 at 7. Since her hospitalization, she needs assistance bathing, dressing, transferring, and toileting. Doc 63 at 4. According to Frank, and as corroborated by his mother's records in the rehab facility, Mrs. Van Laer needs something close to 24/7 care. Doc. 62-2 at 2.

Mr. VanLaar has two brothers in addition to Frank. Doc. 62 at 6. Theodore Van Laer and Nicholas Van Laer live out of state in Maryland. Doc. 62-2 at 3–4. All three

---

[2] The Pre-Sentence report explains the different spelling of Mr. VanLaar's name from that used by his mother and brothers. Doc. 52 at ¶ 37.

brothers have submitted affidavits explaining why they are unable to provide the degree of care their mother needs. *See* Doc. 62-2 at 2–4; Doc. 71-1 at 1–4. Frank is employed full time in a job that takes him out of town, sometimes overnight. Doc. 62-2 at 2. While he takes care of his mother's basic needs, such as grocery shopping, medical appointments, finances, and cleaning, as a result of her recent fall and hospitalization she needs more care than Frank can provide given his employment. *Id.* Theodore and Nicholas live full time in Maryland, a six-hour drive from North Carolina. *See* Doc. 62-2 at 3–4. Theodore is employed and assists with childcare for his grandchildren, Doc. 62-2 at 3, and Nicholas works full time five to six days per week. Doc. 71-1 at 1. Both state they cannot provide full-time care for their mother. Doc. 62-2 at 3–4; Doc. 71-1 at 1–4.

There is no evidence as to the financial situations of Mr. VanLaar's mother or his brothers or as to whether there are funds available to pay for home health aides; given the information in the pre-sentence report, *see* Doc. 52 at ¶¶ 37–39, and the fact that the brothers are still employed well into their 60s, it seems unlikely. The record is silent on what steps if any have been taken to investigate other resources to assist Mrs. Van Laer.

If released, Mr. VanLaar plans to live with Frank, near their mother. Doc. 66 at 2–3; Doc. 63-1 at 2, 7. The probation office has approved this residence as appropriate and verified that the address is acceptable for the sex offender registry. Doc. 66 at 3. Mr. VanLaar has secured verified employment with an immediate start date upon his release. *Id.* at 3; Doc. 63-1 at 2. This employment will be flexible and will allow Mr. VanLaar and his brother together to provide the care that their mother needs. Doc. 71 at 9 n.4.

5

## IV. Discussion

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *See United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial 'change of heart.'"). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permit it to do so. *See* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A), often called the "compassionate release" provision, is one such statutory provision.

For a sentence reduction under § 3582(c)(1)(A) to be appropriate, the defendant must satisfy the exhaustion requirement. *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021). The defendant must then show that extraordinary and compelling reasons merit a reduction in sentence, that the reduction is consistent with any applicable policy statements issued by the Sentencing Commission, and that the relevant § 3553(a) sentencing factors do not counsel against early release. *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020); *United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). Even if the court finds extraordinary and compelling reasons support release, the court in its discretion may deny a defendant's motion after balancing the applicable § 3553(a) factors. *High*, 997 F.3d at 186.

### A. Exhaustion

Mr. VanLaar made a request for compassionate release to the warden in June 2021. Doc. 62-1 at 2. The request was denied, *id.* at 5, so, as the government agrees, Mr. VanLaar has satisfied the exhaustion requirement. Doc. 67 at 5 n.1.

### B. Policy Statement

The Sentencing Commission has not yet adopted a policy statement applicable to motions filed directly by defendants. *High*, 997 F.3d at 186. The existing policy statement applicable to motions filed by the warden, U.S.S.G. § 1B1.13, offers helpful guidance, but it is not binding and does not set a threshold requirement that Mr. VanLaar must meet. *See McCoy*, 981 F.3d at 282 n.7. Instead, courts should consider "*any* extraordinary and compelling reason for release that a defendant may raise." *Id.* at 284 (emphasis in original).

### C. Extraordinary and Compelling Circumstances

Under the non-binding policy statement, extraordinary and compelling reasons for compassionate release exist when an inmate is needed to care for his minor child after death or incapacitation of the child's caregiver, or when he is the "only available caregiver" for an incapacitated spouse or "registered partner." U.S.S.G. § 1B1.13 n.(1)(C). Thus, the policy statement explicitly recognizes extraordinary and compelling reasons based on family circumstances, though the identified circumstances are narrower than those here.

Courts have recognized that serving as the caregiver for a close family member can be an extraordinary and compelling reason supporting compassionate release. *See e.g.*, *United States v. Hicklin*, No. 16-CR-2, 2020 WL 7406791, at *2 (W.D. Va. Dec. 11, 2020); *United States v. Bucci*, 409 F. Supp. 3d. 1, 2 (D. Mass. 2019); *United States v. Henriquez*, No. 15-CR-225, 2021 WL 5771543, at *3–5 (M.D.N.C. Dec. 6, 2021). But courts in the Fourth Circuit have generally denied compassionate release when other

7

caregivers are available. *See, e.g.*, *United States v. Smith*, No. 15-CR-101, 2021 WL 3641463, at *3 (E.D. Va. Aug. 17, 2021) (denying compassionate release where others could care for the defendant's ill father); *United States v. Allen*, No. 13-CR-24, 2021 WL 3025458, at *3 (W.D. Va. July 16, 2021) (denying compassionate release where the defendant alleged neither that his mother was incapacitated nor that he was her only available caregiver); *United States v. Hargrove*, No. 17-CR-167, 2021 WL 2210844, at *4 (W.D.N.C. June 1, 2021) (denying compassionate release where defendant sought to care for arthritic mother who lived with the defendant's brother and the defendant had other living siblings); *United States v. Hooks*, No. 18-CR-59, 2021 WL 796156, at *3 (W.D.N.C. Mar. 2, 2021) (denying compassionate release where defendant sought to care for mother with terminal cancer diagnosis); *cf. Hicklin*, 2020 WL 7406791, at *2 (granting compassionate release where the defendant was the only possible caregiver for a severely ill parent who also supported the defendant's disabled adult sister, and the defendant's other sibling was unavailable).

The Court agrees with the emerging consensus that a mere desire to assist an aging parent is not an extraordinary and compelling circumstance and that the availability of others to provide needed care is an important factor. Here, however, there is more. Mr. VanLaar's mother is almost 100 years old. She was recently hospitalized and now requires more frequent assistance with activities of daily living. She only has family assistance to meet her needs, and the only son who lives close by cannot provide all of the care that she needs because of his own need for employment and the nature of his work. Mr. VanLaar was the primary caregiver for his mother before his incarceration.

8

While it is true that Theodore and Nicholas could theoretically provide more care for their mother, to do so would require them to move from Maryland where they are employed or to travel many times a month from Maryland. Theodore would likely have to stop providing childcare for his grandchildren. Neither is "available" to provide the degree of care Mrs. Van Laer needs.

Even so, these facts alone likely fall short of extraordinary and compelling circumstances. There have been no efforts made to find additional resources beyond family to provide assistance for Mrs. Van Laer, and the two Maryland brothers could provide more assistance, even if not as much as perhaps Mrs. Van Laer needs.

Congress has specified that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for sentence reduction. 28 U.S.C. § 994(t). However, the Fourth Circuit has recognized successful rehabilitative efforts as "one among other factors under § 3582(c)(1)(A)(i)" that support finding extraordinary and compelling reasons to grant relief. *McCoy*, 981 F.3d at 286 n.9 (upholding rehabilitation, shown through education, vocational achievements, and payment of restitution, as a factor contributing to extraordinary and compelling reasons for sentence reduction). Thus, rehabilitation is not only a § 3553(a) factor, but it can also be considered at the extraordinary and compelling reasons stage of analysis in conjunction with other facts and circumstances. *Id.*

In over eight years of incarceration, Mr. VanLaar has had no disciplinary or behavioral issues. Doc. 66 at 2. He has completed over 500 hours of educational and vocational courses, and he has completed the Drug Education program. Doc. 66 at 1–2.

9

He has paid his special assessment fee, and he has worked steadily in prison work programs with positive reviews and good performance ratings. Doc. 66 at 2; Doc. 71-1 at 5–6. All the evidence establishes positive rehabilitative efforts on his part.

Taken together, Mr. VanLaar's model behavior in prison, his work towards rehabilitation, his family circumstances, and the length of the sentence he has already served constitute extraordinary and compelling circumstances. The Court so finds.

### D. Section 3553(a) Considerations

Mr. VanLaar had a criminal history score of zero and had never been in jail or prison before committing the instant offense. Doc. 52 at 8–9. Until his arrest and incarceration, he had been employed full-time since 1997, *see id.* at ¶¶ 48–51, with his most recent employer finding him to be a "good manager and employee" who was "reliable and dependable." *Id.* at ¶ 48. Based on a risk assessment completed in May 2022, his risk level to the public is minimal. Doc. 71-1 at 13. He has employment lined up upon his release so he will be able to support himself. Doc. 63-1 at 2; Doc. 66 at 3.

The nature and circumstances of Mr. VanLaar's current offense establish the need for a lengthy sentence. His computer contained thousands of images of child pornography and over several hundred child pornography video files. Doc. 52 at ¶ 7. The plea agreement called for dismissal of another charge, receiving child pornography. Doc. 14 at ¶ 5(a). Mr. VanLaar told law enforcement that he had an interest in "legal teenage boys," Doc. 52 at ¶ 12, and that the pornography was a "novelty" and "curiosity" of his. *Id.* at ¶ 8. But he had previously sent sexually explicit photographs to a teenage boy. *Id.* at ¶ 31. The Court imposed a substantial 190-month sentence, accurately

10

reflecting the seriousness of the offense and the need for general deterrence in this area specifically; it was also consistent with the recommendations in the plea agreement. *See* Doc. 14 at ¶ 2(a). On the other hand, there is no history or evidence that Mr. Van Laar has ever engaged in illegal touching of a child or that he ever solicited the creation of child pornography, making him a lower risk of recidivism. *See* Charles R. Breyer et al., *Federal Sentencing of Child Pornography: Non-Production Offenses* 71 (2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf. As a condition of supervised release, he will be subject to searches of his computer or smart phone, if probation allows him to use them, both at home and at work, to ensure he is not having contact with teenage boys or sending sexually explicit material to children. Doc. 26 at 4.

Mr. VanLaar has now been imprisoned for nearly nine years—a significant length of time. *See* Doc. 67-1 at 2 (showing detention since October 17, 2013). Given his lack of criminal history, the nature of his offense, his rehabilitative efforts and his age, 65, the risk of recidivism is low. He does not have a history of violence, and he has taken full advantage of available educational and vocational training during his incarceration, positioning him for a successful transition into society.

Mr. VanLaar's successful compliance on pretrial supervision tends to show he does well with structured support. Doc. 52 at ¶ 3. He will be on supervised release for fifteen years. Doc. 26 at 3. The supervised release conditions already in place, especially the requirement to register as a sex offender, *id.* at 3, and the conditions to participate in a mental health program with emphasis on sex offender treatment, to consent to

11

unannounced examinations of any computer equipment, and to avoid contact with any person under the age of 18, *id.* at 4, provide additional protection to the community.

Section 3582(c)(1)(A) authorizes courts to impose additional terms of supervised release when a sentence is reduced, if appropriate, and that is the case here, given that a substantial part of the reason for the sentence reduction is so he can provide care for his mother. It is appropriate to require Mr. VanLaar to live with his brother or mother, if that can be done consistent with state laws, for at least five years, the time he otherwise would have spent in prison; to assume primary responsibility for care of his mother by spending at least eight hours a day with her; and to be limited in the time he can spend doing other things, as least in the short run.[3] A six-month period of home detention at the start of his release is appropriate, except to go to work or care for his mother at her home, given the reasons for the sentence reduction.

A sentence reduction to time served with additional conditions of supervised release satisfies the § 3553(a) factors. To facilitate planning for Mr. VanLaar's return to society, the Court will stay this order for 28 days so the Probation Office can make appropriate arrangements for his release to the Middle District of North Carolina.

The Court appreciates the government's argument that the § 3553(a) factors do not support release. Doc. 67 at 12–14. Receipt of child pornography is a very serious crime and there is a substantial need for society to show its disapproval and condemnation of child pornography in the strongest possible terms. For this offense, general deterrence is

---

[3] This may affect Mr. VanLaar's ability to work full-time, but the primary reason for his early release is to look after his mother; work must come second.

12

important. Mr. VanLaar does have a previous conviction for a crime based on inappropriate communication with a teenager. But a time served sentence followed by restrictive supervised release meets these needs, as Mr. VanLaar has been in custody for close to nine years, a substantial sentence by anyone's calculation, and his daily activities will be substantially limited for the coming years.

## V. Conclusion

Mr. VanLaar is needed to provide care for his elderly and ailing mother and has engaged in real rehabilitative efforts. Together these constitute extraordinary and compelling reasons for a sentence reduction. The § 3553(a) factors also support early release.

Mr. VanLaar's sentence of imprisonment will be reduced to time served, stayed for 28 days. The terms of supervised release originally ordered remain in place, with the additional requirements that he live with either his mother or his brother Frank for the first five years of his supervised release; that he assume primary responsibility as caregiver for his mother and spend at least eight (8) hours a day with her; and that he be on home detention for the first six months of his supervised release except to go to work, to his mother's home, and to take his mother to medical appointments approved by the probation office in advance.

Judgment will be entered separately.

This the 24th day of June, 2022.

_____
UNITED STATES DISTRICT JUDGE

13

Case 1:13-cr-00119-CCE  Document 72  Filed 06/24/22  Page 13 of 13